IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CHRIS CHURNEY, | ) | |
| Plaintiff, | ) | Case Number: |
| | ) | |
| v. | ) | Judge: |
| | ) | |
| CHICAGO HOUSING AUTHORITY, | ) | Magistrate Judge: |
| Defendant. | ) | |
| | ) | Jury Trial Demanded |

## COMPLAINT

Plaintiff Chris Churney states as her complaint against the Chicago Housing Authority ("CHA") as follows:

## THE PARTIES

1. Chris Churney is a natural person residing in Chicago, Illinois.

2. The CHA is a municipal corporation of the State of Illinois and administers the Housing Choice Voucher ("HCV") Program for the United States Department of Housing and Urban Development ("HUD"). 24 C.F.R. § 982.1(a). It maintains its offices and conducts its affairs in Chicago, Illinois.

## JURISDICTION AND VENUE

3. Subject matter jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 42 U.S.C. § 3613 (fair housing).

4. Venue is appropriate in this judicial district pursuant to 28 U.S.C. § 1391 because the acts and events giving rise to the claims alleged herein occurred in this judicial district.

## JURY DEMAND

5. Ms. Churney demands a jury trial on all triable issues.

**FACTUAL BACKGROUND**

I. **HCV PROGRAM**

6. The HCV Program, which the CHA administers in Chicago and which used to be known as the Section 8 Program, provides rental subsidies to low income families that are eligible so they can rent safe, decent, and affordable housing in the private market.

7. Ms. Churney relied on HCV funding, which she began receiving on or about November 16, 1983, to pay her rent until her HCV was terminated on September 31, 2011.

8. During her time in the HCV Program, Ms. Churney's family income was always within HCV Program limits. Ms. Churney paid approximately 30% of her adjusted household income toward housing as determined by Housing and Urban Development ("HUD") regulations and the CHA paid the difference in rent to Ms. Churney's landlord.

II. **MS. CHURNEY'S LIVING SITUATION**

9. Ms. Churney and her teenage daughter reside in an apartment at 6811 N. Ashland Ave., Apt. #3N, Chicago, IL 60626. Ms. Churney has lived at 6811 N. Ashland since on or about June 1995.

10. The Pratt-Ashland Cooperative (the "Cooperative") owns the apartment complex at 6811 N. Ashland Ave, Chicago, IL 60626. Ms. Churney is a member of good standing in the Cooperative and owns one (1) voting share in the Cooperative. This share provides her with an ownership interest in the Cooperative and her apartment.

11. Without her participation in the HCV Program, Ms. Churney cannot afford her rent at 6811 N. Ashland on her own because her income would not allow her to pay that amount.

12. Ms. Churney receives $698 per month in Supplemental Security Income ("SSI"). She also receives $117 per month from the Department of Human Services to help take care

of her teenage daughter and $298 monthly in food stamps. These are her only sources of income.

13. Ms. Churney's rent is $890 per month and the assessment on her apartment is roughly $50 per month. Her utilities are approximately $300 per month, and she also pays approximately $30 per month in laundry, $50 in bus fare and $60 in other miscellaneous bills.

14. Ms. Churney currently has a roommate who helps her with the rent and other expenses. Without a roommate or HCV assistance, Ms. Churney could not rent safe, decent, and affordable housing in the private market.

### III. MS. CHURNEY'S HISTORY OF MENTAL ILLNESS

15. Ms. Churney was diagnosed with Bipolar Disorder with psychotic effects at the age of 23.

16. Over the past thirty years, in an attempt to treat her illness, she has been in and out of the care of doctors and psychiatric institutions and received a wide range of medications. She has been prescribed many different types of medication since her initial diagnosis.

17. When not treated properly, Ms. Churney's illness manifests itself in long sleepless periods, delusions, and other effects. Ms. Churney's illness affects the way she sleeps, thinks, and concentrates.

### IV. MS. CHURNEY'S 2006 INCIDENT

18. In mid to late 2005, Ms. Churney was transitioning between psychiatrists and was not on a full medication regimen. During that time she was also forced to evict her son from her home because of personality conflicts, and she underwent major heart surgery. These events negatively affected her psychiatric stability.

19. In January 2006, Ms. Churney was talking to people who were not there, seeing things that were not there, and had delusions about her body being attacked spiritually. She was worried that the world was coming to an end and that God was coming to judge humanity.

20. For five or six straight days in January 2006, she did not sleep. On January 27, at the end of this period, her daughter left for a sleepover. Not wanting to be alone, Ms. Churney went to spend the night at the house of a friend from her church.

21. During the night, she knocked on the friend's door because she did not want to be alone, but neither the friend nor his wife responded. She later went into the room of the friend's teenage son and asked him to hold her because she was scared. Ms. Churney went into the room. Although the son made sexual advances towards her, Ms. Churney did not make any sexual advances towards him and left.

22. The next day, Ms. Churney was involuntarily hospitalized. (*See* January 28, 2006 Psychiatric Report, attached as Exhibit 1.) The attending physician stated that Ms. Churney was brought to the hospital in a "confused psychotic state" and diagnosed her as "acutely psychotic" with "poor" impulse control and judgment. She was hospitalized for over three weeks.

23. Three months later, Ms. Churney was arrested and charged with four counts of Aggravated Sexual Abuse. (*See* Certified Statement of Conviction, attached as Exhibit 2.) After ten months of proceedings, she accepted a plea bargain whereby if she pleaded guilty to one charge of aggravated sexual assault, the State would drop the three remaining charges and recommend that the court sentence her to two years probation and a ten-year sex offender registration period. Ms. Churney pled guilty to one count and she

was sentenced to two years probation and required to take a sex offender counseling course. Despite the proffered plea, Ms. Churney was nonetheless classified as a lifetime sex offender in accordance with the Illinois Sex Offender Registration Act. 730 ILCS § 150/1 *et seq.*

24. During the proceedings, Ms. Churney was twice hospitalized for psychiatric care.

25. Ms. Churney has never before and has not since been accused of any improper conduct with a minor and has successfully completed her probation and sex offender counseling. She has never been convicted of any other crimes.

### V. SINCE HER PLEA, MS. CHURNEY HAS SUCCESSFULLY MANAGED THE SYMPTOMS OF HER BIPOLAR DISORDER.

26. Since Ms. Churney's plea, she has been psychiatrically stable and consistently attending Trilogy, Inc., a Chicago not-for-profit healthcare organization providing mental health services, for mental health treatment. She also attends psychosocial rehabilitation groups and case management classes, and is currently receiving bi-weekly psychiatric services and psychotherapy from Advocate Illinois Masonic Medical Center.

27. She has a good attendance record and has been compliant with her medication regimen. The medical professionals working with her report that she has made a great commitment to understand and manage her Bipolar Disorder since the incident. (*See* October 14, 2010 Letter from Drs. Jodie Goldberg and Joseph Mason, attached as Exhibit 3, and Letter from Carolyn Baird, attached as Exhibit 4.)

### VI. THE CHA TERMINATES MS. CHURNEY'S PARTICIPATION IN THE HCV PROGRAM DESPITE HER REPEATED REQUESTS FOR A REASONABLE ACCOMMODATION.

28. As part of the HCV Program, the CHA regularly reexamines and recertifies the qualifications of HCV participants. This process includes verifying household size and

income, performing a background check, and further verifying other Program requirements.

29. The CHA recertified Ms. Churney several times over the course of her participation in the Program, including at least one recertification after her guilty plea in 2007.

30. However, on September 20, 2010, the CHA sent an Intent to Terminate ("ITT") Notice to Ms. Churney. The CHA rescinded that notice on October 18, 2010 and allowed her to continue receiving her HCV.

31. The CHA sent a second ITT to Ms. Churney on December 21, 2010, informing her that it intended to terminate her participation in the HCV Program. The ITT Notice stated that the CHA was taking action because Ms. Churney was "guilty of aggravated sexual abuse of a victims [sic] ages of 13-16 …. Chris Churney is currently listed and registered in the State of Illinois Sex Offender information website as a 'Sexual Predator.'"

32. On August 2, 2011, the CHA held an informal hearing on its intended termination of Ms. Churney from the HCV Program. (*See* Informal Hearing Decision, attached as Exhibit 5.)

33. At the informal hearing, the CHA argued that Ms. Churney was in violation of Section 5-6 of the CHA Administrative Plan, which states that no member of the family receiving a HCV may "be subject to a lifetime sex offender registration or lesser registration, including the ten year Illinois State Sex Offender Registration Act."

34. At the hearing, Ms. Churney argued that the CHA should make a reasonable accommodation under the Fair Housing Amendments Act, Section 504 of the Rehabilitation Act, Title II of the Americans with Disabilities Act and the rules governing the HCV Program. She argued that the proximate cause of her revocation was her

Bipolar Disorder because her actions during a psychotic episode led to her sexual offender status, and that was the basis of the CHA's ITT.

35. Ms. Churney argued that it would be a reasonable accommodation for the CHA to grant an exception to the rule, in light of the circumstances and her disability. In return, she suggested that the CHA require her to submit written confirmation of ongoing monitoring and counseling as evidence of her continued treatment to ensure ongoing compliance with its rules.

36. Upon information and belief, the CHA has rules allowing for HCV applicants or participants who have a history of drug or alcohol abuse to provide evidence of continued treatment in a similar manner as Ms. Churney requested as a condition of their receiving a HCV.

37. Upon information and belief, the CHA allows individuals who have been convicted of felonies to join or continue in the HCV Program and receive vouchers.

38. Upon information and belief, the HCA has granted accommodations to participants who, by reason of mental disability, have violated HCV Program rules.

39. On August 24, 2011, the hearing officer issued the CHA's final decision terminating Ms. Churney's participation in the HCV Program.

40. In her decision, the hearing officer denied Ms. Churney's request for a reasonable accommodation because: (1) "no connection was established between Ms. Churney's disability and the Aggravated Criminal Sexual Abuse"; (2) "there was no credible evidence presented that a reasonable accommodation would prevent similar future incidents"; and (3) "no reasonable accommodation would allow Ms. Churney to meet CHA requirements as CHA requires that participants not be registered sex offenders."

41. The hearing officer further concluded that Ms. Churney's requested accommodation was not reasonable because (1) the accommodation would place an "undue financial and administrative burden on the CHA"; and (2) "[a]llowing Registered Sex Offenders and child molesters to remain in the program is not the type of reasonable accommodation the legislature intended."

42. On or around September 31, 2011, the CHA ceased paying Ms. Churney's HCV housing assistance payments to her landlord.

43. On February 10, 2012, through counsel, Ms. Churney pointed out to the CHA factual and legal mistakes in the CHA hearing officer's decision, and again requested a reasonable accommodation. (*See* February 10, 2012 Letter from M. Carter, attached as Exhibit 6.) Ms. Churney requested that "as a reasonable accommodation, the CHA allow Ms. Churney's continued participation in exchange for Ms. Churney remaining in treatment and submitting written confirmation of her continued treatment at her regular reexaminations."

44. On March 7, 2012, the CHA denied this additional request for a reasonable accommodation because "Ms. Churney is no longer a participant in the voucher program." (*See* March 7, 2012 Letter from Edward Robles, attached as Exhibit 7.) Thus, Ms. Churney was denied participation in the Program because the CHA failed to accommodate her reasonable request; however, she could not challenge that failure to accommodate because she was no longer in the Program. She faced a Catch-22.

45. The CHA has failed to engage in any other communication on this matter.

46. Upon information and belief, the CHA has reinstated public housing for people whose vouchers have been terminated.

47. Reinstatement of Ms. Churney's subsidy is necessary to afford Ms. Churney an equal opportunity to participate in the HCV Program and remain in her housing.

48. Without HCV benefits, Ms. Churney cannot afford the rent by herself.

49. Without reinstatement to the HCV Program, Ms. Churney and her family could be forced from their current apartment and as a result, may become homeless. She will suffer numerous irreparable injuries – including the loss of her home and a potential mental regression – if she is evicted. (*See* Exhibits C and D.)

50. Ms. Churney does not have an adequate remedy at law for her termination from the Program because the Program provides her with continued support to pay her rent and there is no adequate remedy at law for homelessness.

## COUNT I
## Fair Housing Amendments Act (42 U.S.C. § 3604(f))

51. Ms. Churney re-alleges paragraphs 1-50 of this Complaint and incorporates them herein.

52. Because she has Bipolar Disorder, Ms. Churney is handicapped person under 42 U.S.C. § 3602(h).

53. As described above, Ms. Churney's lifetime sex offender status was a direct result of her mental disability.

54. The Chicago Housing Authority knew of, or reasonably should have known of, Ms. Churney's disability and her requested accommodation based on her testimony at the Informal Hearing.

55. Ms. Churney's requested accommodation of reinstatement contingent upon continued mental health treatment is necessary because the CHA policy, if left unmodified, will harm Ms. Churney by reason of her handicap.

56. Ms. Churney's request is also reasonable because contingent reinstatement will allow the CHA to accommodate Ms. Churney's disability at little or minimal administrative cost to the CHA. Furthermore, upon information and belief, the CHA already has similar programs in place for former alcohol and drug users, and admits ex-felons into the HCV Program.

57. The CHA therefore violated § 3604(f)(3)(B) of the Fair Housing Amendments Act by failing to grant Ms. Churney's repeated requests for a reasonable accommodation and thereby discriminating against her on the basis of a handicap.

58. The CHA's failure to accommodate Ms. Churney's disability will proximately cause immediate and irreparable harm to Ms. Churney and has already caused her emotional and mental injury.

## COUNT II
### Rehabilitation Act (29 U.S.C. § 794)

59. Ms. Churney re-alleges paragraphs 1-50 of this Complaint and incorporates them herein.

60. The CHA receives federal funding for its HCV Program and, as such, is covered by the Rehabilitation Act.

61. Ms. Churney is a person with a disability as defined in 29 U.S.C. § 705(20)(B) because her Bipolar Disorder substantially limits one or more major life activities, specifically sleeping, concentrating, and thinking. *See also* 42 U.S.C. § 12102(2). Furthermore, as described above, her status as a sex offender is a direct result of her mental disability.

62. But for her status as a Sex Offender, Ms. Churney is otherwise qualified to receive benefits under the HCV Program.

63. Ms. Churney's requested accommodation of reinstatement contingent upon continued mental health treatment is necessary because the CHA policy, if left unmodified, will harm Ms. Churney by reason of her handicap.

64. As described above, Ms. Churney's requested accommodation is reasonable because it promotes the federal goal of not discriminating against disabled people and does so at a minimal cost to the CHA. Furthermore, upon information and belief, the CHA already has similar programs in place for former alcohol and drug users, and admits ex-felons into the HCV Program.

65. The CHA therefore violated § 504 of the Rehabilitation Act by failing to grant Ms. Churney's repeated requests for a reasonable accommodation. 29 U.S.C. § 794(a).

66. The CHA's failure to accommodate Ms. Churney's disability will proximately cause immediate and irreparable harm to Ms. Churney and has already caused her emotional and mental injury.

## COUNT III
### Americans With Disability Act (42 U.S.C. § 12132)

67. Ms. Churney re-alleges paragraphs 1-50 of this Complaint and incorporates them herein.

68. The HCV Program is a public service within the meaning of Title II of the ADA. 42 U.S.C. § 12132.

69. Ms. Churney's Bipolar Disorder is a disability under 42 U.S.C. § 12102 because it is a mental impairment that substantially limits one or more major life activities, specifically sleeping, concentrating and thinking. Furthermore, as described above, her status as a sex offender is a direct result of her mental disability.

70. But for her status as a Sex Offender, Ms. Churney is otherwise qualified to receive benefits under the HCV Program.

11

71. Ms. Churney's requested accommodation of reinstatement contingent upon continued mental health treatment is necessary because the CHA policy, if left unmodified, will harm Ms. Churney by reason of her handicap.

72. As described above, Ms. Churney's requested accommodation is reasonable because it promotes the federal goal of not discriminating against disabled people and does so at a minimal cost to the CHA. Furthermore, upon information and belief, the CHA already has similar programs in place for former alcohol and drug users, and admits ex-felons into the HCV Program.

73. The CHA therefore violated Title II of the ADA by failing to grant Ms. Churney's repeated requests for a reasonable accommodation. 28 C.F.R. § 35.130(b)(7).

74. The CHA's failure to accommodate Ms. Churney's disability will proximately cause immediate and irreparable harm to Ms. Churney and has already caused her emotional and mental injury.

**PRAYER FOR RELIEF**

WHEREFORE, Ms. Churney prays that this Court:

A. Declare that the CHA's refusal to adjust its Program rules to grant Ms. Churney a reasonable accommodation, as set forth above, violates the Fair Housing Amendments Act, Section 504 of the Rehabilitation Act, and Title II of the ADA;

B. Enter a preliminary and permanent injunction: (1) ordering the CHA to reinstate Ms. Churney into the HCV Program and (2) prohibiting the CHA from terminating Ms. Churney from the HCV Program due to her sex offender status, on the condition that she provides to the CHA documentation that she is receiving ongoing treatment;

C.   Enter an order that the Ms. Churney shall not be required to post bond as security for the issuance of any injunctive relief;

D.   Award Ms. Churney compensatory and punitive damages that she has suffered as a direct and proximate result of the CHA's violations of the Fair Housing Amendments Act, Rehabilitation Act, and ADA, as described in Counts I-III;

E.   Award attorneys' fees and costs; and

F.   Grant further relief as this Court deems just and proper.


Dated: August 27, 2012                                              Respectfully submitted,


                                                                    CHRIS CHURNEY
                                                                    By: /s/ Steven H. Hoeft_____
                                                                         One of Her Attorneys

                                                                    Steven H. Hoeft
                                                                    Long Truong
                                                                    Nathaniel L. Whalen
                                                                    McDERMOTT WILL & EMERY LLP
                                                                    227 W. Monroe Street
                                                                    Chicago, Illinois 60606
                                                                    Tel: 312-372-2000
                                                                    Fax: 312-984-7700

                                                                    *Attorneys for Plaintiff Chris Churney*

DM_US 35442739-2.099730.0050

13