IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHRIS CHURNEY, | ) |
|       Plaintiff, | ) |
| v. | ) No. 12 C 6864 |
| CHICAGO HOUSING AUTHORITY, | ) |
|       Defendant. | ) |

MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, Chief Judge:

      Plaintiff Chris Churney alleges that the Chicago Housing Authority ("CHA") violated the Fair Housing Amendments Act of 1988 ("FHAA"), 42 U.S.C. § 3604(f) (Count I), the Rehabilitation Act, 29 U.S.C. § 794 (Count II), and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132 (Count III), by revoking her rent subsidy after she was convicted of aggravated sexual assault because of an incident she alleges was caused by her bipolar disorder. (Dkt. No. 1 ("Compl.").) The CHA now moves to dismiss all three counts of Churney's complaint. (Dkt. No. 12.) For the reasons explained below, that motion is granted.

FACTUAL BACKGROUND

      The CHA, a municipal corporation of Illinois, administers the federal Housing Choice Voucher (HCV) program to provide rental subsidies to low-income families. (Compl. ¶¶ 2, 6.) Churney is a low-income individual who began receiving HCV funding in 1983, which she uses to pay for an apartment in Chicago where she resides with her teenage daughter. (*Id.* ¶¶ 7-9.) Over thirty years ago, Churney was diagnosed with bipolar disorder with psychotic effects. (*Id.* ¶¶ 15-16.) She has received treatment from a wide range of doctors and psychiatric institutions,

and has taken a variety of medications to control her illness. (*Id.* ¶ 16.) When not treated properly, Churney's bipolar disorder manifests itself through long sleepless periods, delusions, impaired concentration, and other effects. (*Id.* ¶ 17.)

In mid to late 2005, Churney was transitioning between psychiatrists and was not taking sufficient medication to control her bipolar disorder. (*Id.* ¶ 18.) As a result, in January 2006 Churney was having delusions, believed her body was being attacked spiritually, had difficulty sleeping, and was worried that the world was coming to an end. (*Id.* ¶ 19.) After a five or six day period of no sleep, on January 27 Churney was left alone in her apartment when her daughter left for a sleepover. (*Id.* ¶ 20.) Because she did not want to be alone, Churney went to spend the night at the house of a friend from her church. (*Id.*) During the night, Churney entered the room of the friend's teenage son. (*Id.* ¶ 21.) According to the complaint, "[a]lthough the son made sexual advances towards her, Churney did not make any sexual advances towards him and left." (*Id.* ¶ 21.) As a result of the encounter, Churney was arrested and charged with four counts of aggravated sexual abuse. (*Id.* ¶ 23.) She pled guilty to one of the counts, was sentenced to two years of probation, and was ordered to take a sex offender counseling course. (*Id.*) Because of the conviction, Churney is classified as a lifetime sex offender in accordance with the Illinois Sex Offender Registration Act, 730 ILCS § 150. (Compl. ¶ 23.)

The day after the incident of sexual abuse, Churney was involuntarily taken to the hospital, where she was diagnosed as "acutely psychotic." (*Id.* ¶ 22.) She stayed in the hospital for three weeks receiving psychiatric care. (*Id.*) During the criminal proceedings against her, Churney was hospitalized twice more for psychiatric care. (*Id.* ¶ 24.) Following the conviction, Churney has

received mental health treatment from Trilogy, Inc., and Advocate Illinois Masonic Medical Center, and her doctors indicate that she "has made a great commitment to understand and manage her Bipolar Disorder since the incident." (*Id.* ¶¶ 26-27.)

The CHA recertified Churney to participate in the HCV program several times following her conviction. (*Id.* ¶¶ 28-29.) Nonetheless, on December 21, 2010, the CHA informed Churney that it intended to terminate her participation in the HCV program because her conviction for a sex crime and her registration as a lifetime sex offender put her in violation of CHA policies. (*Id.* ¶¶ 31, 33.) On August 2, 2011, the CHA held an informal hearing on the termination. (*Id.* ¶ 33.) Churney did not dispute that CHA policy required her termination from the HCV program, but instead argued that the CHA should make a reasonable accommodation for her disability under the FHAA, the Rehabilitation Act, and the ADA. (*Id.* ¶ 34.) Churney's proposed accommodation was that she be granted an exception to the rule disqualifying sex offenders so long as she agrees to submit written confirmation of ongoing treatment for her mental health problems to the CHA. (*Id.* ¶ 35.) That accommodation, Churney alleges, is similar to the accommodation the CHA provides to drug and alcohol abusers, who must provide evidence of continued treatment to the CHA. (*Id.* ¶ 36.) On August 24, 2011, the CHA rejected Churney's proposed accommodation and removed her from the HCV program. (*Id.* ¶¶ 40, 43.)

## LEGAL STANDARD

Under the Federal Rules of Civil Procedure, a complaint need contain only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon

3

which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Although "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555. The complaint must "include sufficient facts 'to state a claim for relief that is plausible on its face.'" *Cole v. Milwaukee Area Tech. Coll. Dist.*, 634 F.3d 901, 903 (7th Cir. 2011) (quoting *Justice v. Town of Cicero*, 577 F.3d 768, 771 (7th Cir. 2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In ruling on a Rule 12(b)(6) motion, the court "construe[s] the . . . [c]omplaint in the light most favorable to Plaintiff, accepting as true all well-pleaded facts and drawing all possible inferences in his favor." *Cole*, 634 F.3d at 903.

## ANALYSIS

Churney does not dispute that the CHA's policies require her termination because of her conviction for a sex crime and her status as a sex offender. Instead, she alleges that her bipolar disorder is a protected disability, and that her bipolar disorder caused the sexual conduct leading to her conviction. Accordingly, she contends that the CHA's decision to terminate her from the HCV program because of her conviction constitutes unlawful discrimination on the basis of her disability.

Specifically, Churney asserts that the CHA unlawfully discriminated against her by failing to grant her a reasonable accommodation allowing her to stay in the HCV program despite her bipolar disorder and her conviction. The FHAA, ADA, and Rehabilitation Act each contain a

4

requirement of reasonable accommodation, and courts interpret the requirements similarly. *See Oconomowoc Residential Programs v. City of Milwaukee*, 300 F.3d 775, 783 (7th Cir. 2002) ("The requirements for reasonable accommodation under the ADA are the same as those under the FHAA."); *Gile v. United Airlines, Inc.*, 95 F.3d 492, 497 (7th Cir. 1996) ("[T]he Rehabilitation Act incorporates the ADA's definition of reasonable accommodation."); *see also Wis. Cmty. Servs., Inc. v. City of Milwaukee*, 465 F.3d 737, 746-53 (7th Cir. 2006) (en banc) (surveying the reasonable accommodation requirement of each of the three statutes). Under the reasonable accommodation requirement, "a public entity must reasonably accommodate a qualified individual with a disability by making changes in rules, policies, practices, or services when needed." *Oconomowoc Residential Programs*, 300 F.3d at 782-83.

To show entitlement to a reasonable accommodation, a plaintiff must plead and prove that the requested accommodation is both reasonable and necessary. *Id.* at 783. To be reasonable, an accommodation must be "both efficacious and proportional to the costs to implement it." *Id.* at 784. Similarly, to be necessary, the accommodation must "'affirmatively enhance a disabled plaintiff's quality of life by ameliorating the effects of the disability.'" *Id.* (quoting *Dadian v. Village of Wilmette*, 269 F.3d 831, 838 (7th Cir. 2001)). Both the reasonable and necessary elements therefore require that the requested accommodation effectively ameliorate the condition caused by a disability that prevents the plaintiff from enjoying the benefits of the program provided by the public entity.

Here, the concern underlying the CHA's policy requiring the termination of sexual offenders from the HCV program is the safety of the other residents living near Churney. That

5

concern is legitimate, as the FHAA specifically provides that landlords need not provide reasonable accommodations to tenants who "constitute a direct threat to the health or safety of other individuals or whose tenancy would result in substantial physical damages to the property of others." 42 U.S.C. § 3604(f)(9). To succeed in her claim for a reasonable accommodation, therefore, Churney must allege and ultimately prove that the accommodation she requested will ameliorate the safety concern created by her bipolar disorder and her conviction for a sex crime. *See Super v. J. D'Amelia & Assocs., LLC*, No. 3:09-cv-831, 2010 WL 3926887, at *5, *8 (D. Conn. Sept. 30, 2010) (Underhill, J.) ("An extension of Section 8 benefits can serve as an accommodation when there is evidence to support the plaintiff's contention that continued rental subsidies will effectively allow her to use and enjoy her dwelling *without posing a threat to her neighbors and the public*." (emphasis added)).

Churney does not allege that her requested accommodation—that she be granted an exception to the CHA's prohibition on sex offenders so long as she submits written confirmation of ongoing monitoring and counseling for her bipolar disorder—will be effective in ameliorating the risk that she will suffer another psychotic episode and threaten the safety of residents living near her. The complaint does allege that "[s]ince Churney's plea, she has been psychiatrically stable" and has been receiving treatment from Trilogy, Inc., and Advocate Illinois Masonic Medical Center. (Compl. ¶ 26.) It also alleges that "the medical professionals working with her report that she has made a great commitment to understand and manage her Bipolar Disorder since the incident." (*Id.* ¶ 27.) Neither of those statements alleges that the accommodation will assist in Churney's treatment, however, or will make her any less likely to suffer a psychotic episode in the

future.

To the contrary, Churney was receiving treatment even before the January 2006 incident, and the complaint does not allege that her treatment after her conviction is substantially different from the treatment before it, or that it is any more likely to prevent a psychotic episode. (*Id.* ¶ 16; *see also* Dkt. No. 1, Ex. 4.) To be sure, the complaint alleges that Churney suffered the psychotic episode while she was "transitioning between psychiatrists and was not on a full medication regimen." (Compl. ¶ 18.) But the proposed accommodation will not eliminate the risk that Churney will again transition between psychiatrists and find herself in the same situation in the future.

One could speculate that the requirement that Churney submit written confirmation to the CHA of her ongoing treatment could provide her an additional incentive to continue her treatment and thus ensure that she does not suffer another psychotic episode. Based on its "judicial experience and common sense," however, the court finds that possibility implausible. *Iqbal*, 556 U.S. at 679. The proposed accommodation provides no mechanism to ensure that Churney's representations to the CHA about her continued treatment are accurate, nor does it provide an avenue for the CHA to address the situation if Churney ceases treatment.[1] More to the point, Churney has not alleged that the accommodation in fact will make it any more likely that she will continue to receive medical treatment or that she will avoid another psychotic attack that could put

---

[1] Presumably, Churney contemplates that the CHA would terminate her participation in the HCV program if Churney ever failed to certify in writing that she was receiving treatment for her bipolar disorder. There is no guarantee, however, that the CHA could terminate her participation in the program before she suffered another psychotic attack.

other residents at risk.

The absence of sufficient allegations about the effectiveness of the requested accommodation distinguishes this case from *Super*, 2010 WL 3926887. In *Super*, the court denied a motion to dismiss the housing discrimination claim of a mentally ill person whose rental subsidy was terminated because she committed a crime at her residence allegedly because of her mental illness. *Id.* at *1. The court held that the plaintiff's request that the defendant grant her an exception to its policies and extend her rental subsidy could be a reasonable accommodation under the FHAA, ADA, and Rehabilitation Act. *Id.* at *7. The court reasoned that the proposed accommodation was sufficient because the complaint alleged that the plaintiff "is seeking psychiatric treatment that she was not previously receiving, and which she is compelled to receive pursuant to a court order." *Id.* at *7 (footnote omitted). The accommodation was sufficient only because of those additional safeguards. By contrast, Churney has not alleged that she is receiving new treatment, nor is her mental health treatment compelled by a court order. It is thus implausible that Churney is now any less likely to pose a threat to the community in which she lives, or that the proposed accommodation will be effective in lessening the threat.

The court stresses that it is not making any determination about whether Churney's requested accommodation, if it were accompanied by a plausible allegation that it would effectively ameliorate Churney's disability, is ultimately reasonable. That inquiry is "highly fact-specific" and "requires balancing the needs of the parties." *Oconomowoc Residential Programs*, 300 F.3d at 784. It is thus not appropriate for the court to make that determination at the motion to dismiss stage. Rather, the court holds that a necessary prerequisite to any finding of

reasonableness is that the requested accommodation ameliorate the legitimate safety concerns underlying the CHA's decision to terminate Churney from the HCV program. In the absence of an allegation to that effect, Churney has not adequately alleged a claim that she was denied a reasonable accommodation.

Moreover, the court is skeptical that Churney can plausibly make the allegations necessary to support her claim. The CHA's written decision terminating Churney's participation in the HCV program summarizes the testimony the CHA received at the August 2, 2011, hearing. (Dkt. No. 1, Ex. 5.)[2] Churney testified as follows:

> She stated she does not really understand what caused the incident but she thinks it was aggravated by the fact that she wasn't taking her medication. She stated that *it is not in her control and sometimes when she has gotten sick it just happens out of the blue*. She stated she is not sure how to make sure similar events don't occur but she can try to keep her mental health in check by exercise, eating right, sleeping and controlling stress. She stated that losing her housing is one of the triggers that would send her into a tailspin. She stated that if she felt herself getting out of control she would hope that she would turn to the medical professionals in her life but that *she doesn't always see what leads up to it and when mania hits her it hits her like a rocket*. She stated that there's no way anything like that would ever happen again because it goes against her grain.

(Dkt. No. 1, Ex. 5, at 5 (emphasis added).) The decision then indicates that Churney also "stated that when the incident happened she was receiving services from the same people she receives services from now." (*Id.*) That testimony suggests that Churney cannot allege that she was receiving any additional treatment at the time of the CHA's decision to terminate her. In addition,

---

[2] Because the CHA's decision is attached to the complaint, is referred to in the complaint, and is central to Churney's claim, the court may consider it on a motion to dismiss. *McCready v. eBay, Inc.*, 453 F.3d 882, 891 (7th Cir. 2006). Of course, for purposes of the motion to dismiss, the court will not accept as true all of the facts contained within the CHA's decision. Instead, the court will accept as true that the CHA's decision was based on the factors referenced therein.

it suggests that the proposed accommodation will not effectively ameliorate the danger that Churney will suffer another psychotic episode that will put her neighbors and the public at risk. Thus, although the court appreciates the arguments of Churney's counsel and the court is granting Churney leave to file a first amended complaint to attempt again to state a claim, if supported by the facts and warranted by the law, she and her counsel should consider whether, in light of her testimony at the hearing, Churney can make the necessary allegations consistent with Rule 11 of the Federal Rules of Civil Procedure.

Finally, because the court is dismissing Churney's complaint for the reason that Churney has not sufficiently alleged that her proposed accommodation would be effective at ameliorating the dangers caused by her disability, the court need not consider the CHA's other arguments for dismissal of the pending complaint. If Churney files a first amended complaint, the CHA is not foreclosed from asserting those arguments, if it desires, in a motion to dismiss Churney's first amended complaint.

## CONCLUSION

On the bases stated above, the CHA's motion to dismiss (Dkt. No. 12) is granted. Churney's complaint is dismissed without prejudice. Churney is granted leave to file a first amended complaint, if supported by the facts and warranted by the law, on or before 3/1/13. The failure timely to file a first amended complaint will result in dismissal of Churney's claims with prejudice and termination of this case. If a first amended complaint is filed on or before 3/1/13, the CHA shall answer or otherwise plead by 3/15/13, and notice any motion for 3/19/13 at 9:00 am. The case is set for a status at that time.

ENTER:

/s/ James F. Holderman
JAMES F. HOLDERMAN
Chief Judge, United States District Court

Date: February 14, 2013